UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


BRENDA ANDERSON, Administratrix of the Estate
of Kimberly Anderson,

       Plaintiff,

v.                                   Civil Action No. 2:19-cv-00198

NATHANIEL BARKLEY, individually and in his
official capacity as a correctional officer of
the West Virginia Division of Corrections and
Rehabilitation;

THE WEST VIRGINIA DIVISION OF CORRECTIONS AND
REHABILITATION, an agency of the State of West
Virginia;

JAMES E. JAMISON, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

DEVIN M. BROWN, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

SGT. ROBERTA M. EVANS, individually and in her
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

SGT. MARK A. GOODMAN, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

ADMINISTRATOR DEBRA MINNIX, individually and
in her official capacity as administrator of
The West Virginia Division of Corrections and
Rehabilitation; and

JOHN DOE, unknown person or persons, individually
and in their official capacity as correctional
officers of the West Virginia Division of Corrections
and Rehabilitation,

Defendants.

KARA FALKNER,

      Plaintiff,

v.                                    Civil Action No. 2:19-cv-00199

NATHANIEL BARKLEY, individually and in his
official capacity as a correctional officer of
the West Virginia Division of Corrections and
Rehabilitation;

THE WEST VIRGINIA DIVISION OF CORRECTIONS AND
REHABILITATION, an agency of the State of West
Virginia;

JAMES E. JAMISON, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

DEVIN M. BROWN, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

SGT. ROBERTA M. EVANS, individually and in her
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

SGT. MARK A. GOODMAN, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

ADMINISTRATOR DEBRA MINNIX, individually and
in her official capacity as administrator of
The West Virginia Division of Corrections and
Rehabilitation; and

JOHN DOE, unknown person or persons, individually
and in their official capacity as correctional
officers of the West Virginia Division of Corrections
and Rehabilitation,

      Defendants.

2

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are motions for summary judgment filed by Defendants West Virginia Department of Corrections and Rehabilitation, Sgt. Roberta M. Evans, Sgt. Mark A. Goodman, and Administrator Debra Minnix in the related above-styled cases on April 6, 2020 (<u>Anderson v. Barkley</u>, No. 2:19-cv-00198, ECF No. 104; <u>Falkner v. Barkley</u>, No. 2:19-cv-00199, ECF No. 95).

I.    Background

The original plaintiffs, Kimberly Anderson[1] and Kara Falkner, initiated separate civil actions against the West Virginia Department of Corrections and Rehabilitation ("WVDCR"); three WVDCR correctional officers, Nathanial Barkley, James E. Jamison, and Devin M. Brown; and three WVDCR supervisory or administrative officials, Sgt. Roberta M. Evans, Sgt. Mark A. Goodman, and Administrator Debra Minnix (together, the "Supervisor Defendants").  See <u>Anderson</u>, ECF No. 1; <u>id.</u>, ECF No. 47 (Anderson Amended Complaint, hereinafter, "AAC"); <u>Falkner</u>,

_____

[1] Brenda Anderson, the administratrix of the estate of the original plaintiff, Kimberly Anderson, was substituted as the plaintiff in No. 2:19-cv-00198 following Kimberly's death.  <u>See Anderson</u>, ECF No. 122.

ECF No. 1 at 2; id., ECF No. 53 (Falkner Amended Complaint, hereinafter, "FAC").

The plaintiffs' operative amended complaints allege the following. Anderson and Falkner were female inmates residing at Tygart Valley Regional Jail, which is operated by WVDCR. See AAC ¶ 2-3; FAC ¶ 2-3. Barkley, as well as Jamison and Brown, were correctional officers at Tygart Valley, while Sgt. Evans and Sgt. Goodman were Barkley's supervisors, and Administrator Minnix was Tygart Valley's administrator. See AAC ¶¶ 4, 7-9; FAC ¶¶ 4, 7-9.

The plaintiffs allege that Barkley had a pattern of "act[ing] inappropriately with the female inmates at [Tygart Valley], including committing sexual assault, sexual harassment, sexual abuse, sexual exploitation, and other illegal, threatening, or oppressive behavior." AAC ¶ 19; FAC ¶ 19. They allege that other WVDCR officials, including the Supervisor Defendants, were aware of Barkley's conduct. For instance, they allege that Barkley engaged in inappropriate conduct openly in front of the Supervisor Defendants; that he had been reprimanded or monitored by the Supervisor Defendants based on his inappropriate conduct with female inmates; and that he had been temporarily relieved of his duties of supervising female inmates

4

because of inappropriate conduct with them.  See AAC ¶¶ 20, 22-
24; FAC ¶¶ 20, 22-24.

The plaintiffs further allege that the Supervisor
Defendants, despite knowing of Barkley's actions, allowed him to
return to his duties supervising female inmates.  See AAC ¶¶ 24-
25; FAC ¶¶ 24-25.  Upon returning to these duties, Barkley
"sexually assaulted [Anderson and Barkley], sexually harassed
[them], sexually abused [them], threatened [them] and oppressed
[them] under threat of retaliation" on several occasions.  AAC
¶ 25; FAC ¶ 25; see AAC ¶¶ 26-27.

After one incident in which Barkley sexually assaulted
both the plaintiffs, they reported Barkley's actions to WVDCR
officials at Tygart Valley.  See AAC ¶¶ 40-41; FAC ¶¶ 39-40.
The plaintiffs allege that the ensuing investigation was
inadequate and found the plaintiffs' report unsubstantiated.
See AAC ¶¶ 41-42; FAC ¶¶ 40-41.  The plaintiffs further allege
that the Supervisor Defendants retaliated against them by
transferring both of them out of cells where they wished to
remain housed, by ordering Anderson to be tested for drugs, and
by firing Anderson from her position as a trustee for possessing
contraband clothing.  See AAC ¶¶ 43-46; FAC ¶¶ 42-43.

Based on these allegations, the plaintiffs, in Count I
of their operative complaints, assert that the Supervisor

5

Defendants were deliberately indifferent to the plaintiffs'
safety by not sufficiently protecting them from sexual assault
and retaliation, which amounted to cruel and unusual punishment
prohibited by the Eighth Amendment of the United States
Constitution and the West Virginia Constitution and that the
Supervisor Defendants deprived the plaintiffs of their "liberty
interests, bodily integrity, right to equal protection of law
and right to due process, and right to be protected from
discrimination."  AAC ¶¶ 53–55; accord FAC ¶¶ 50–52.  In Count
II, the plaintiffs assert that the conduct of WVDCR and the
Supervisor Defendant was "atrocious, intolerable, and so extreme
and outrageous as to exceed the bounds of decency and so
outrageous as to offend community notions of acceptable
behavior" and "so severe that no reasonable person could be
expected to endure [it]," causing them to "suffer severe
emotional distress, giving rise to a claim of compensatory
damages against [WVDCR and the Supervisor Defendants] . . . and
punitive damages against [the Supervisor Defendants]."  AAC ¶¶
57–59; accord FAC ¶¶ 54–56.  In Count III, the plaintiffs assert
causes of action for the "[t]ort[s] of civil battery," "civil
assault," and "intentional infliction of emotional
distress/outrage" against the Supervisor Defendants.  AAC ¶ 61;
accord FAC ¶ 58.  In Count IV, the plaintiffs assert a civil
conspiracy claim against the Supervisor Defendants.  See AAC ¶¶

62-64; FAC ¶¶ 59-61.  In Count V, the plaintiffs assert that the Supervisor Defendants retaliated against them; that the Supervisor Defendants were deliberately indifferent to the abuse they suffered at Barkley's hands as well as in hiring, training, and supervising Barkley; and that WVDCR is vicariously liable for the Supervisor Defendants' deliberate indifference.  See AAC ¶¶ 65-71; FAC ¶¶ 62-68.  Both complaints seek monetary damages.  AAC at 15; FAC at 14.[2]

Following the close of discovery, WVDCR and the Supervisor Defendants filed the current motions for summary judgment.  See Anderson, ECF No. 36; id., ECF No. 104; Falkner, ECF No. 71; id., ECF No. 95.  The motions have been fully briefed and are ready for disposition.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the

---

[2] Notably, Counts I, III, and IV do not assert any claim against WVDCR, and Count II does not seek punitive damages against WVDCR.  Further, the complaints state that "[n]o claims are asserted against . . . WVDCR under 42 U.S.C. § 1983 as the agency is not a person, nor under the West Virginia Human Rights Act."  AAC ¶ 71; FAC ¶ 68.

outcome of the suit under the governing law." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  Id.  In deciding a
motion for summary judgment, the court must view the evidence
and all reasonable inferences drawn therefrom in a light most
favorable to the non-moving party.  See Tolan v. Cotton, 572
U.S. 650, 651, 657 (2014) (per curiam).


### III. Discussion


**A.   Section 1983 claims against WVDCR and the Supervisor**
**Defendants in their official capacities**

WVDCR and the Supervisor Defendants first argue that
they are entitled to summary judgment to the extent the
plaintiffs assert § 1983 claims against WVDCR and against the
Supervisor Defendants in their official capacities.

Although the operative complaints specify that the
Supervisor Defendants are sued in both their individual and
official capacities, see AAC at 1; FAC at 1, the plaintiffs
state in their summary-judgment briefing that they are "only
alleging federal claims under . . . § 1983 against [the
Supervisor Defendants] in their individual capacities" and "not
. . . in their official capacities."  Anderson, ECF No. 112 at

8

10 & n.1; accord Falkner, ECF No. 101 at 9 & n.1.  Further, although Count V appears to assert a federal constitutional claim against WVDCR for deliberate indifference, the plaintiffs reiterate that they are "not making any claims under . . . § 1983 . . . against [WVDCR]," Anderson, ECF No. 112 at 10 n.1; accord Falkner, ECF No. 101 at 9 & n.1, a concession they expressed in their complaints.

Counts I and V appear to assert federal Eighth Amendment claims against the Supervisor Defendants in their individual and official capacities.[3]  Inasmuch as the plaintiffs represent that they are not pursuing federal claims against the

---

[3] To the extent the plaintiffs' complaints attempt to premise liability on a Fourteenth Amendment substantive due process theory, they may not do so.  See Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" (internal quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)).  To the extent the complaints assert claims against the Supervisor Defendants under the Fourteenth Amendment's Equal Protection Clause or under the First Amendment for retaliation, the plaintiffs appear to have abandoned these claims in their summary judgment briefing, which presents no argument or evidence in support of such claims.  See Anderson, ECF No. 112 at 10 (explaining that the "federal claims under . . . § 1983 against [the Supervisor Defendants] . . . are being made under the theory of supervisory liability and deliberate indifference"); accord Falkner, EFC No. 101 at 9.

Supervisor Defendants in their official capacities, the court deems these official-capacity claims to be abandoned.

Count V appears to assert an Eighth Amendment claim against WVDCR.  Typically, such a claim must be brought pursuant to § 1983.  See Muhammed v. Close, 540 U.S. 749, 750 (2004) (per curiam).  Inasmuch as the plaintiffs disclaim reliance on § 1983 and identify no other vehicle by which they may pursue their Count V federal claim against WVDCR, the court deems that claim likewise to be abandoned.

Accordingly, the Supervisor Defendants are entitled to summary judgment on Counts I and V to the extent they assert federal claims against the Supervisor Defendants in their official capacity, and WVDCR is entitled to summary judgment on Count V to the extent it asserts a federal claim against WVDCR.

B.    Violation of the West Virginia Constitution

WVDCR and the Supervisor Defendants also argue that Counts I and V of the plaintiffs' complaints must be dismissed to the extent they assert a claim under the West Virginia Constitution because West Virginia does not recognize a private cause of action for money damages for a violation of Article III, Section 5, under which the claims are presumably brought.

After summary-judgment briefing had completed, the West Virginia Supreme Court of Appeals held, in <u>Fields v. Mellinger</u>, ___ S.E.2d ___, 2020 WL 7223533 (W. Va. Nov. 18, 2020), that "West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution." Syl. pt. 3, <u>Fields</u>, 2020 WL 7223533, at *1. Although <u>Fields</u> addressed Section 6, rather than Section 5, of Article III, several facets of the decision strongly suggest that its analysis applies with equal force to Section 5.

Subsequently, all parties in both cases filed stipulations dismissing the claims for violation of the West Virginia Constitution on the grounds that, following the decision in <u>Fields</u>, they are no longer viable. <u>See</u> <u>Anderson</u>, ECF No. 135; <u>Falkner</u>, ECF No. 120. The court thus concludes that WVDCR and the Supervisor Defendants are entitled to summary judgment on Counts I and V of the plaintiffs' complaints to the extent they assert a cause of action under the West Virginia Constitution.[4]

---

[4] The parties' stipulations purport to dismiss claims for violation of the West Virginia Constitution. The vehicles for effecting voluntarily dismissals are found in Fed. R. Civ. P. 41(a) and Fed. R. Civ. P. 15(a). <u>See</u> <u>Skinner v. First Am. Bank of Va.</u>, 64 F.3d 659, 1995 WL 507264 (4th Cir. Aug. 28, 1995) (unpublished table decision). Although, in these circumstances,

C.   Qualified Immunity

      Next, WVDCR and the Supervisor Defendants argue that they are protected by qualified immunity against the remaining federal and state-law claims in the plaintiffs' complaints.

    (1)   Federal claims[5]

      "'Qualified immunity shields . . . state officials individually from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Fauconier v. Clarke, 966 F.3d 265, 280 (4th Cir. 2020) (internal quotation marks and brackets omitted) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  "[F]or a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have

---

Rule 41(a) does not permit the dismissal of less than all the claims against a defendant without a court order, see 8 Moore's Federal Practice § 41.21 (2020), it is not clear whether such a dismissal may be effected under Rule 15(a).  Nonetheless, the court concludes that it is appropriate to dismiss the claims in this memorandum opinion and order inasmuch as all other claims against these defendants will not survive dismissal.

[5] Although WVDCR argues that it is entitled to qualified immunity with respect to the federal claims against it, the result of the court's determination in Part III.A, supra, is that there is no remaining federal claim against WVDCR.

12

understood that what he is doing violates that right.'" Id.
(quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)).

The complaints' remaining federal claims assert that
the Supervisor Defendants, acting in their individual
capacities, violated the plaintiffs' Eighth Amendment rights.
The Eighth Amendment prohibits "cruel and unusual punishments,"
U.S. Const. amend. VIII, and thus requires "reasonable
protection against unreasonable risk of harm in a prison
environment." Hite v. Leeke, 564 F.2d 670, 673 (4th Cir. 1977).
Because "gratuitously allowing" prisoners to be "beat[en] or
rap[ed] . . . serves no legitimate penological objective,"
Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation
marks and brackets omitted), under the Eighth Amendment,
"prisoners have a right to be free from sexual abuse, whether at
the hands of fellow inmates or prison guards," Jackson v.
Holley, 666 F. App'x 242, 244 (4th Cir. 2016) (per curiam)
(quoting Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir.
2004)); see Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir.
2006), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S.
34 (2010), as recognized by Sconiers v. Lockhart, 946 F.3d 1256
(11th Cir. 2020).

"A prison official's 'deliberate indifference' to a
substantial risk of serious harm to an inmate violates the

13

Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994).
Thus, prison officials violate the Eighth Amendment by being
deliberately indifferent to the substantial risk that a prisoner
will be sexually assaulted by other prisoners. See, e.g.,
Howard v. Waide, 534 F.3d 1227, 1235–41 (10th Cir. 2008); Doe v.
Roe, 907 F.2d 1137, 1990 WL 86285, at *3 (4th Cir. 1990)
(unpublished table decision). A violation likewise occurs when
prison officials are deliberately indifferent to the substantial
risk that a prisoner will be sexually assaulted by prison
officials. See Castillo v. Day, 790 F.3d 1013, 1020 (10th Cir.
2015); Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir.
2001); Daskalea v. District of Columbia, 227 F.3d 433, 441–42
(D.C. Cir. 2000).

However, plaintiffs asserting that a prison's
supervisory officials are liable for deliberate indifference to
the risk posed by a subordinate official's abusive behavior face
"a heavy burden." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.
1994). In such cases, supervisor "liability 'is not premised
upon respondeat superior but upon a recognition that supervisory
indifference or tacit authorization of subordinates' misconduct
may be a causative factor in the constitutional injuries they
inflict.'" Campbell v. Florian, 972 F.3d 385, 389 (4th Cir.
2020) (internal quotation marks omitted) (quoting Shaw, 13 F.3d

at 798).  "[T]o establish supervisory liability under § 1983," a

plaintiff must show:

> (1) that the supervisor had actual or constructive
> knowledge that his subordinate was engaged in conduct
> that posed a pervasive and unreasonable risk of
> constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge
> was so inadequate as to show deliberate indifference
> to or tacit authorization of the alleged offensive
> practices[]; and (3) that there was an affirmative
> causal link between the supervisor's inaction and the
> particular constitutional injury suffered by the
> plaintiff.

Shaw, 131 F.3d at 799 (internal quotation marks omitted).

        "As to the first element, 'establishing a pervasive

and unreasonable risk of harm requires evidence that the conduct

is widespread, or at least has been used on several different

occasions and that the conduct engaged in by the subordinate

poses an unreasonable risk of harm of constitutional injury.'"

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014)

(internal quotation marks and brackets omitted) (quoting Shaw,

13 F.3d at 799).  And "[a]s to the second element, a plaintiff

'may establish deliberate indifference by demonstrating a

supervisor's continued inaction in the face of documented

widespread abuses.'"  Id. (quoting Shaw, 13 F.3d at 799).

        The court concludes that the Supervisor Defendants are

entitled to qualified immunity against the plaintiffs' Eighth

Amendment claims because the right the plaintiffs assert against

the Supervisor Defendants is not clearly established.  The
Supreme Court has "repeatedly stressed that courts must not
'define clearly established law at a high level of generality,
since doing so avoids the crucial question whether the official
acted reasonably in the particular circumstances that he or she
faced.'"  District of Columbia v. Wesby, 138 S. Ct. 577, 590
(2018) (quoting Plumhoff v. Rickard, 572 U.S. 765, 779 (2014));
see id. ("A rule is too general if the unlawfulness of the
officer's conduct "'does not follow immediately from the
conclusion that [the rule] was firmly established.'" (quoting
Anderson v. Creighton, 483 U.S. 635, 641 (1987))).  In their
briefing at the summary-judgment stage, the plaintiffs, having
had the benefit of discovery,[6] argue that the Supervisor
Defendants violated their right to be free from an unreasonable
risk of sexual assault by permitting Barkley, whom they knew to
be using contraband tobacco products while performing his duties
in violation of prison policies, to continue to supervise the
plaintiffs and other female prisoners.  See Anderson, ECF No.

---

[6] At the motion-to-dismiss stage, the court recognized that "it
is clearly established that a prison official's deliberate
indifference to a substantial risk that a prisoner will be
subjected to sexual abuse by another prison official violates
the Eighth Amendment."  Anderson, ECF No. 123 at 17-18; accord
Falkner, ECF No. 109 at 17-18.  This standard would be too
generalized to employ at this stage of litigation.  See e.g.,
Winfield v. Bass, 106 F.3d 525, 530-31 (4th Cir. 1997) (en
banc).

112 at 11–13; <u>Falkner</u>, ECF No. 101 at 10–12.[7]  Thus, the proper inquiry is whether it was clearly established at the time the alleged violation occurred that prison supervisory officials violate a prisoner's Eighth Amendment right to not be subjected to an unreasonable risk of sexual assault by permitting a subordinate male prison official, whom they know violates prison regulations by bringing contraband tobacco products into the prison, to continue to supervise female prisoners.  <u>Cf.</u> <u>Winfield</u>, 106 F.3d at 532 n.4 ("[T]he pertinent question is whether the law was clearly established that a failure by prison officials to confiscate immediately alcoholic beverages possessed by inmates constituted an unreasonable response to a substantial risk to inmate safety.").

---

[7] The plaintiffs have presented evidence that prison policies prohibited correctional officers from using tobacco products while performing their duties, <u>see</u> <u>Anderson</u>, ECF No. 112-2 at 5; ECF No. 112-4 at 4; that Barkley used tobacco products while performing his duties, <u>see</u> <u>id.</u>, ECF No. 112-1 at 10, 12; ECF No. 112-4 at 4; ECF No. 112-5 at 2-3; and that Sgt. Evans and Sgt. Goodman knew that Barkley did so, <u>see</u> <u>id.</u>, ECF No. 112-4 at 4; ECF No. 112-5 at 2-3.  Although the plaintiffs have presented evidence that Barkley gave tobacco products to female prisoners and was disciplined for his use of tobacco products, <u>see</u> <u>id.</u>, ECF No. 112-1 at 2, 10, 12, that evidence, as the Supervisor Defendants point out, appears to be hearsay and not capable of being presented in an admissible form, <u>see</u> Fed. R. Civ. P. 56(c)(2).  More importantly, the plaintiffs have presented no evidence that the Supervisor Defendants knew that Barkley had given tobacco products to female prisoners.

The plaintiffs point to no authority holding or suggesting that supervisory prison officials violate a prisoner's Eighth Amendment rights by permitting a subordinate official to continue performing his duties despite knowing that he violates prison policy by using contraband tobacco while doing so, and the court's own research has not unearthed any such authority.  Instead, the plaintiffs argue that the Supervisor Defendant's failure to rectify known violations of prison policies is sufficient.  To the extent the plaintiffs rely on prison policies, evidence that the Supervisor Defendants failed to enforce those policies is not sufficient in itself to demonstrate a violation of a clearly established right.  See Abney v. Coe, 493 F.3d 412, 419 (4th Cir. 2007) ("[A] violation of departmental policy does not equate with constitutional unreasonableness." (citing Davis v. Scherer, 468 U.S. 183, 194–96 (1984))); Smith v. Atkins, 777 F. Supp. 2d 955, 965 (E.D.N.C. 2011) ("[T]he mere failure to comply with [a] state regulation and jail policy is not a constitutional violation." (citing, inter alia, Davis, 468 U.S. at 194–96)).

Because the right the plaintiffs claim the Supervisor Defendants violated was not clearly established, the Supervisor Defendants in their individual capacities are entitled to qualified immunity on the plaintiffs' remaining federal law

claims in Counts I and V, and summary judgment as to those
claims is therefore appropriate.

    (2)  State law claims

      Next, WVDCR and the Supervisor Defendants argue that
they are entitled to qualified immunity with respect to the
state-law claims against them.  Federal courts apply a state's
qualified-immunity doctrine to claims arising under state law.
See Pegg v. Herrnberger, 845 F.3d 112, 121 (4th Cir. 2017).
Under West Virginia law, "[t]o determine whether the State, its
agencies, officials, and/or employees are entitled to immunity,
a reviewing court must first identify the nature of the
governmental acts or omissions which give rise to the suit for
purposes of determining whether such acts or omissions . . .
involve . . . discretionary governmental functions."  Syl. pt.
10, W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B., 766 S.E.2d
751, 756 (W. Va. 2014).  If the acts or omissions involve
discretionary governmental functions, "a reviewing court must
determine whether the plaintiff has demonstrated that such acts
or omissions are in violation of clearly established statutory
or constitutional rights or laws of which a reasonable person
would have known or are otherwise fraudulent, malicious, or
oppressive."  Syl. pt. 11, A.B., 766 S.E.2d at 756.  "In absence
of such a showing, both the State and its officials or employees

19

charged with such acts or omissions are immune from liability."
Id.  If the plaintiff demonstrates the violation of a clearly
established right or law, the court must then "determine whether
such acts or omissions were within the scope of the public
official or employee's duties, authority, and/or employment."
Syl. pt. 12, A.B., 766 S.E.2d at 756.  If the official's acts or
omissions are within that scope, "the State and/or its agencies
may be held liable for such acts or omissions under the doctrine
of respondeat superior along with the public official or
employee"; however, if they are outside that scope, "the State
and/or its agencies are immune from vicarious liability, but the
public employee or official is not entitled to immunity."  Id.

        Here, the plaintiffs assert that the Supervisor
Defendants engaged in two kinds of "acts" that give rise to the
plaintiffs' remaining state-law claims.  First, both Anderson
and Falkner allege that the Supervisor Defendants were
deliberately indifferent in Barkley's hiring, training, and
supervision, resulting in the sexual abuse they suffered.  See
Anderson, ECF No. 112 at 17; Falkner, ECF No. 101 at 16.
Second, Anderson alleges that the Supervisor Defendants
retaliated against her for reporting Barkley's sexual abuse by
transferring her from her preferred cell, by ordering her to be
tested for drugs, and by firing her from her position as a

trustee.  See Anderson, ECF No. 112 at 17.  The plaintiffs assert that these acts involved discretionary governmental functions, and the Supervisor Defendants have not argued otherwise.  See A.B., 766 S.E.2d at 773 ("[T]he broad categories of training, supervision, and employee retention . . . easily fall within the category of 'discretionary' governmental functions."); see also Shamblen v. Fragale, No. 2:14-cv-24610, 2017 WL 9532915, at *11 (S.D.W. Va. July 13, 2017) (noting that state prison officials' decisions to initiate drug tests and move inmate to a more secure facility "appear to be discretionary in nature.").

Because the acts at issue involve discretionary functions, the court must determine whether the plaintiffs have demonstrated that the acts violate clearly established rights or laws.  See Syl. pt. 11, A.B., 766 S.E.2d at 756.  With respect to the allegations regarding Barkley's hiring, training, and supervision, the plaintiffs assert that the Supervisor Defendants violated clearly established rights or laws by failing to discipline or report Barkley when he violated prison regulations by "passing contraband to female inmates," engaging in "susp[ected] . . inappropriate relationships with female inmates, and possibl[y] [committing] sexual assault."  Anderson,

21

ECF No. 112 at 17; accord Falkner, ECF No. 101 at 16.[8]  As explained above, however, the plaintiffs have not adduced sufficient evidence to demonstrate that the Supervisor Defendants knew Barkley was passing contraband tobacco products to the female inmates, let alone that he was engaging in inappropriate relationships with them or sexually assaulting them.  See Cordwell v. Widen, No. 2:18-cv-00913, 2019 WL 3887547, at *4 (S.D.W. Va. Aug. 15, 2019) (concluding that prisoner plaintiffs failed to demonstrate a violation of a clearly established right because they failed to show that supervisory officials "knew the danger that [the correctional officer] posed").[9]  Accordingly, with respect to their state-law claims premised on Barkley's inadequate hiring, training, and

_____

[8] To the extent the plaintiffs assert that the clearly established right at issue was their right to be free from sexual assaults, the Supreme Court of Appeals has rejected attempts to define the right at this level of generality when addressing supervisor liability.  See A.B., 766 S.E.2d at 776.

[9] The Supreme Court of Appeals has expressed skepticism that a violation of a state agency's internal policy can rise to the level of a violation of a clearly established right or law, especially where it is doubtful that the policy violation "bears any causal relation to the ultimate injury."  Gillispie v. Crouch, 809 S.E.2d 699, 707 (W. Va. 2018).  Here, the plaintiffs appear to argue that prison regulations, which may be read to have required the Supervisor Defendants to discipline and report Barkley for bringing contraband tobacco into the prison, constitute clearly established law.  However, the plaintiffs have failed to demonstrate that the Supervisor Defendants' alleged violation of these regulations resulted in the sexual abuse they allege.

supervision that resulted in sexual abuse, the plaintiffs have failed to show the violation of a clearly established right or law, and WVDCR and the Supervisor Defendants are entitled to immunity as to those claims.[10]

With respect to allegations concerning retaliation, Anderson asserts that the Supervisor Defendants violated clearly established rights or law by retaliating against her after she reported Barkley's sexual assault. In support, she relies mostly on her own deposition testimony. See ECF No. 112 at 7 (citing ECF No. 112-1). She testified that, after she reported Barkley's assaults, Administrator Minnix initiated an investigation pursuant to the Prison Rape Elimination Act ("PREA"), Pub. L. 108-79, 117 Stat. 973 (2003), two days after the assault occurred, after which Anderson was provided treatment and counseling. See EFC No. 112-1 at 8. However, she testified that, after the investigation commenced, Tygart Valley officials retaliated against her in several ways. See id. at

---

[10] It is not clear from the plaintiffs' complaints and briefing which of their remaining state law claims against WVDCR and the Supervisor Defendants are premised on Barkley's inadequate hiring, training, and supervision. Presumably, such claims would include their claims in Count III of their complaints against the Supervisor Defendants for assault, battery, and intentional infliction of emotional distress and their claims in Count II for intentional infliction of emotional distress to the extent it is premised on Barkley's sexual assaults.

11.  First, unidentified officials "split . . . up" Anderson from her cellmates, who had been "the only comfort [she] had," by transferring her cellmates elsewhere and then transferring Anderson to "medical."  Id.  When Anderson "kind of threw a fit," however, they placed her in "the hole" for "a day or two or something" because "they didn't have . . . [any]where [else] to house [her]."  Id.; see also id. at 13-14 (stating she "believe[s]" she was put in "[i]solation for 24 hours"). Second, an unidentified officer fired Anderson from her position after contraband clothing was found in her laundry bag, which appeared to her to have been tampered with.  See id. at 11, 13. Finally, Administrator Minnix directed that Anderson take an ostensibly random drug test even though she had completed a drug test within the previous month.  See id. at 13.[11]  Viewing this

_____

[11] Citing Sgt. Evans' deposition testimony, Anderson argues that Sgt. Evans "directed" the test.  ECF No. 112 at 7 (citing ECF No. 112-4 at 7).  At Sgt. Evans' deposition, Anderson's counsel inquired about an incident report, which is not cited in her summary-judgment briefing or provided in her summary-judgment exhibits.  Anderson's counsel represented that the incident report stated that an unidentified officer "was advised by [Sgt.] Evans that she wanted [the officer] to drug test . . . Anderson."  ECF No. 112-4 at 7.  Sgt. Evans testified, however, that she "would have been following directives from a superior to have this drug test done"; that she "would not have made the determination to randomly drug test"; and that "the decisionmaker to request a drug test of Ms. Anderson" would have been either one of two officials not named as defendants or Administrator Minnix.  Thus, unrebutted record evidence demonstrates that Sgt. Evans did not decide to have Anderson drug tested, and, for purposes of summary judgment in which the court views the evidence in the light most favorable to

evidence in the light most favorable to Anderson, the court concludes that it is sufficient to create a genuine dispute as to whether the Supervisor Defendants took these actions in retaliation for her reporting of Barkley's sexual assault.

A prisoner's First Amendment right to be free from retaliation by prison officials for filing a report or grievance was clearly established at the time the alleged retaliatory actions at issue took place. See Martin v. Duffy, 858 F.3d 239, 251 (4th Cir. 2017) (citing Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017)). The contours of this clearly established right include being free from prison officials' disciplinary actions — such as false charges of misconduct, denial of work assignments or employment privileges, and placement in disciplinary detention or segregation — imposed for reporting prisoner abuse. See Martin, 858 F.3d at 243; Booker, 855 F.3d at 536, 544–45.

Because Anderson has shown there is a genuine dispute as to the violation of a clearly established right, the court must determine whether the Supervisor Defendants' acts constituting the violation were within the scope of their duties, authority, or employment. See Syl. pt. 12, A.B., 766

---

Anderson, the official who made the decision to have Anderson drug tested was Administrator Minnix.

S.E.2d at 756.  The Supervisor Defendants do not argue that the
alleged acts fall outside that scope, and in fact, their
briefing suggests just the opposite.  See Anderson, ECF No. 105
at 9-10.  Accordingly, neither WVDCR nor the Supervisor
Defendants are entitled to immunity against Anderson's claims
that are premised on allegations of retaliatory conduct by the
Supervisor Defendants.[12]

        Having concluded that WVDCR and the Supervisor
Defendants are not entitled to immunity from Anderson's claims
premised on retaliatory conduct, the court must next determine
which remaining claims fall in that category.  Anderson's
complaint refers to retaliation by the Supervisor Defendants —
in passing — in relation to her civil conspiracy claim in Count
IV, see AAC ¶ 64 ("A purpose of the conspiracy was to avoid a
criminal investigation . . . as to the sexual exploitation of
[Anderson] by . . . Barkley and to engage in retaliation against
[her]."), and her deliberate indifference claim in Count V, see

---

[12] Falkner has not asserted that the Supervisor Defendants
violated clearly established rights or laws by engaging in
retaliatory conduct against her.  Thus, WVDCR and the Supervisor
Defendants are entitled to qualified immunity as to all of
Falkner's remaining state-law claims because she has not
demonstrated that the discretionary governmental actions giving
rise to her claims against them violated clearly established
rights or laws.  See Syl. pts. 10 and 11, A.B., 766 S.E.2d at
756.

id. ¶ 66 (alleging the Supervisor Defendants "were acting in the scope of their employment when they were deliberately indifferent to the acts of . . . sexual abuse . . . by . . . Barkley and when they retaliated against [Anderson] after she reported . . . Barkley's conduct"); see also id. ¶ 1 (seeking relief for "the deliberate indifference of [WVDCR and the Supervisor Defendants] in . . . retaliating against [Anderson] for her complaints regarding [sexual abuse]").  However, the court has already determined that the deliberate indifference and other claims brought under either the federal or West Virginia Constitutions in Count V should be dismissed.  See Part III.A through III.C.(1), supra.  Although not clearly alleged in her complaint, Anderson argues in her summary judgment briefing that the Supervisor Defendants' retaliatory conduct underlies her claim for intentional infliction of emotional distress ("IIED") brought against them and WVDCR.  See Anderson, ECF No. 112 at 14-15.[13]  Accordingly, the court will proceed to address the merits of Anderson's IIED claim against WVDCR and the Supervisor Defendants as well as her civil conspiracy claim against the Supervisor Defendants.

---

[13] The court has already concluded that Anderson's IIED claim should be dismissed to the extent it is premised on a theory that WVDCR and the Supervisor Defendants should be held vicarious liability for Barkley's sexual assaults.

D.   Intentional Infliction of Emotional Distress[14]

        To prevail on an IIED claim, the plaintiff must

establish four elements:

> (1) that the defendant's conduct was atrocious,
> intolerable, and so extreme and outrageous as to
> exceed the bounds of decency; (2) that the defendant
> acted with the intent to inflict emotional distress,
> or acted recklessly when it was certain or
> substantially certain emotional distress would result
> from his conduct; (3) that the actions of the
> defendant caused the plaintiff to suffer emotional
> distress; and, (4) that the emotional distress
> suffered by the plaintiff was so severe that no
> reasonable person could be expected to endure it.

Syl. pt. 3, Travis v. Alcon Labs., Inc., 504 S.E.2d 419, 421 (W.

Va. 1998).  The alleged conduct for the first element "must be

more than unreasonable, unkind or unfair; it must truly offend

community notions of acceptable conduct."  Id. at 425 (internal

quotation marks omitted) (quoting Grandchamp v. United Air

Lines, Inc., 854 F.2d 381, 383 (10th Cir. 1988)).  "[C]onduct

that is merely annoying, harmful of one's rights or

expectations, uncivil, mean-spirited, or negligent does not

constitute outrageous conduct."  Courtney v. Courtney, 413

S.E.2d 418, 423 (W. Va. 1991).

---

[14] Anderson's summary-judgment briefing clarifies that her claim
against WVDCR and the Supervisor Defendants is for intentional,
rather than negligent, infliction of emotional distress.  See
Anderson, ECF No. 112 at 14-15.

The court notes first that Anderson has presented no evidence that Sgt. Evans or Sgt. Goodman were involved in the allegedly retaliatory actions – reassigning her cellmates to other cells, placing her in isolated confinement for a day, firing her from her position, and deciding to subject her to a drug test – that underlie her IIED claim.  Instead, the evidence indicates that these actions were taken by other, mostly unidentified, officials, and Anderson has not pointed to any evidence suggesting that Sgt. Evans or Sgt. Goodman had supervisory authority over those officials.[15]  Accordingly, Sgt. Evans and Sgt. Goodman are entitled to summary judgment on Anderson's IIED claim against them.  See Travis, 504 S.E.2d at 431 ("Individual agents or employees may . . . be held individually responsible for their acts done within the course and scope of their employment[, and] intentional or reckless acts of an employee or supervisor may be imputed to the employer, if those acts were committed within the scope of employment.").

---

[15] In fact, unrebutted record evidence demonstrates that Sgt. Evans lacked supervisory authority over Administrator Minnix, to the extent that the latter decided to subject Anderson to the drug test.

29

With respect to Administrator Minnix and WVDCR,[16] the court concludes that the conduct at issue is not so extreme and outrageous as to exceed the bounds of decency.  See Hatfield v. Health Mgmt. Assocs. of W. Va., 672 S.E.2d 395, 404 (W. Va. 2008) (whether complained-of conduct is outrageous is a question of law that may be decided by the trial court).  Requiring Anderson to take a drug test, although perhaps embarrassing and inconvenient, does not exceed the bounds of decency, cf. Barber v. Whirlpool Corp., 34 F.3d 1268, 1276 (4th Cir. 1994) (noting that, Under South Carolina law, requiring employee accused of malfeasance to submit to polygraph, though "stress[ful]" and "embarrass[ing]," was not outrageous), especially in the prison context, as drug-testing is a normal incident of incarceration arising from legitimate penological interests, see Thompson v. Souza, 111 F.3d 694, 702–03 (9th Cir. 1997).  Likewise, parting Anderson from her cellmates, placing her in isolated confinement for a day, and depriving her of her employment, though perhaps unreasonable, unfair, and unkind, is not beyond the bounds of

---

[16] Unlike Sgt. Evans and Sgt. Goodman, WVDCR and Administrator Minnix can be responsible for the intentional or reckless acts of unidentified subordinate officers, if those acts were committed within the scope of the officers' duties.  See Porter v. W. Va. Reg'l Jail & Corr. Facility Auth., No. 3:14-cv-26583, 2015 WL 5698514, at *4 (S.D.W. Va. Sept. 28, 2015) (citing Travis, 504 S.E.2d at 431).

decency in these circumstances.  Cf. Hewitt v. Helms, 459 U.S. 460, 468 (1984) (explaining, for purposes of due process claim, that "'the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), overruled on other grounds by Sandin v. Conner, 551 U.S. 472 (1995); Penrod v. Zavares, 94 F.3d 1399, 1407 (10th Cir. 1996) (explaining, for purposes of due process claim, that "a denial of employment opportunities to an inmate does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" (quoting Sandin, 551 U.S. 484)).

Further, aside from failing to demonstrate that the actions attributable to WVDCR and Administrator Minnix amounted to outrageous and extreme conduct, Anderson has pointed to no evidence that Administrator Minnix or any of the unidentified officials acted with the intent to cause her to suffer emotional distress or that they did so when it was certain or substantially certain that emotional distress would result.  See Travis, 504 S.E.2d at 421.

Accordingly, the court concludes that WVDCR and the Supervisor Defendants are entitled to summary judgement on Anderson's IIED claim.

E.    Civil Conspiracy

        Count IV of Anderson's complaint alleges that the
Supervisor Defendants engaged in a civil conspiracy to retaliate
against her for reporting Barkley's sexual abuse.  See AAC ¶¶
62–64.  Under West Virginia law, "[a] civil conspiracy is a
combination of two or more persons by concerted action to
accomplish an unlawful purpose or to accomplish some purpose,
not in itself unlawful, by unlawful means."  Syl. pt. 8, Dunn v.
Rockwell, 689 S.E.2d 255, 259 (W. Va. 2009).  "A civil
conspiracy is not a per se, stand-alone cause of action; it is
instead a legal doctrine under which liability for a tort may be
imposed on people who did not actually commit a tort themselves
but who shared a common plan for its commission with the actual
perpetrator(s)."  Syl. pt. 9, Dunn, 689 S.E.2d at 259.[17]

        The Supervisor Defendants argue that Anderson has not
adduced any evidence to support a civil conspiracy claim, and
they point to evidence – such as Administrator Minnix's
initiating a PREA investigation after Anderson reported
Barkley's sexual abuse – that demonstrates they did not engage
in a conspiracy to retaliate against her for her report.  See

---

[17] Alternatively, Anderson's complaint may also be read to assert
a civil conspiracy under 42 U.S.C. § 1985(3).

<u>Anderson</u>, ECF No. 105 at 13-14.  Anderson does not respond to this argument and points to no evidence of a conspiracy.

The court concludes that the Supervisor Defendants have met their initial burden of demonstrating the absence of a genuine issue of material fact with respect to the civil conspiracy claim and have shifted the burden to Anderson and that Anderson has failed to meet her burden to demonstrate the existence of a genuine dispute regarding that claim.  <u>See</u> <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 323 (1986) (describing burdens in summary judgment context).  Accordingly, the Supervisor Defendants are entitled to summary judgment on the civil conspiracy claim in Count IV of Anderson's complaint.

## IV.   Conclusion

For the foregoing reasons, it is ORDERED that:

1.   the motion for summary judgment filed by WVDCR, Sgt. Evans, Sgt. Goodman, and Administrator Minnix in <u>Anderson</u> (ECF No. 104) be, and hereby it is, granted;

2.   the motion for summary judgment filed by WVDCR, Sgt. Evans, Sgt. Goodman, and Administrator

Minnix in _Falkner_ (ECF No. 95) be, and hereby it
is, granted;

3.      the claims against WVDCR, Sgt. Evans, Sgt.
        Goodman, and Administrator Minnix in both the
        amended complaints in _Anderson_ and _Falkner_ be,
        and hereby they are, dismissed; and

4.      WVDCR, Sgt. Evans, Sgt. Goodman, and
        Administrator Minnix be, and hereby they are,
        dismissed as defendants in both _Anderson_ and
        _Falkner_.

The Clerk is directed to transmit copies of this
memorandum opinion and order to all counsel of record and any
unrepresented parties.

                        ENTER: December 29, 2020


                        John T. Copenhaver, Jr.
                        Senior United States District Judge


34